IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WILLIAM M. OBERPRILLER,

       Plaintiff,

    v.

CALIFORNIA DEPARTMENT OF
CORRECTIONS AND REHABILITATION,

       Defendant.

_____/

No. C 10-3782 CW (PR)

ORDER OF DISMISSAL

INTRODUCTION

Plaintiff, a state prisoner, has filed a pro se civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendant violated his rights under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., and § 504[1] of the Rehabilitation Act, 29 U.S.C. § 701 et seq.

His motion for leave to proceed in forma pauperis has been granted.

Venue is proper because the events giving rise to the claim are alleged to have occurred at the Correctional Training Facility (CTF), which is located in this judicial district. See 28 U.S.C. § 1391(b).

In the body of his complaint, Plaintiff names the following Defendants: CTF Correctional Sergeant S. Borgman and CTF Correctional Officer P. Amaro, as well as the California Department

_____

[1] In his complaint, Plaintiff alleges that Defendant violated his rights under § 505 of the Rehabilitation Act. Because § 505 governs remedies and attorney's fees, the Court assumes that Plaintiff intended to raise a claim under § 504, which governs the rights of those with disabilities.

United States District Court
For the Northern District of California

of Corrections and Rehabilitation (CDCR), although he includes only
the CDCR in the caption.  He seeks monetary damages.

DISCUSSION

I.   Standard of Review

A federal court must conduct a preliminary screening in any
case in which a prisoner seeks redress from a governmental entity
or officer or employee of a governmental entity.  28 U.S.C.
§ 1915A(a).  In its review, the court must identify any cognizable
claims and dismiss any claims that are frivolous, malicious, fail
to state a claim upon which relief may be granted or seek monetary
relief from a defendant who is immune from such relief.  <u>Id.</u>
§ 1915A(b)(1), (2).  <u>Pro se</u> pleadings must be liberally construed.
<u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.
1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must
allege two essential elements: (1) that a right secured by the
Constitution or laws of the United States was violated, and
(2) that the alleged violation was committed by a person acting
under the color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48
(1988).

II.   Factual Background

In 1977, Plaintiff lost his left leg in a "motorcycle
collision."  (Compl. at 2.)  Because Plaintiff has only one leg, he
is "normally transported" by CTF transportation staff in an ADA-
compliant transportation vehicle when taken off-site.  (<u>Id.</u> at 3.)

In approximately November 2009, Plaintiff was examined by a
CTF physician, who determined that Plaintiff "required an immediate
liver biopsy."  (<u>Id.</u> at 3.)  Plaintiff did not receive a liver

**United States District Court**
For the Northern District of California

2

United States District Court
For the Northern District of California

1   biopsy.

2        In approximately January 2010, Plaintiff was again examined by

3   a CTF physician.  The physician also "determined a liver biopsy was

4   needed," and reordered Plaintiff's liver biopsy.  (Id.)

5        On March 16, 2010 at 3:30 a.m., Plaintiff was awakened by a

6   CTF Correctional Officer, who directed him to report to the CTF

7   medical department at 4:00 a.m.  When Plaintiff reported to the CTF

8   medical department, he was informed that he would be transported

9   that morning to Natividad Medical Center to receive his liver

10  biopsy.  (Id.)  Defendant Borgman escorted Plaintiff from the CTF

11  medical department to the East-Gate area for "processing, i.e.

12  strip search, clothing change etc."  (Id.)

13       When they reached the East-Gate area, Plaintiff explained to

14  Defendant Borgman that "due to his handicap he required the [ADA]-

15  compliant transportation vehicle . . . ."  (Id.)  Defendant Borgman

16  informed Plaintiff that the ADA-compliant transportation vehicle

17  "was already being utilized by another transportation team," and

18  that Plaintiff would be "transported to his liver biopsy

19  appointment in transportation van # 187."  (Id.)  He added that

20  Plaintiff "could refuse treatment if he wished."  (Id.)  Plaintiff

21  replied that "he feared he may be seriously ill, and really needed

22  this liver biopsy completed."  (Id.)  Defendants Borgman and Amaro

23  "instructed the Plaintiff to use his crutches to get into the

24  transportation vehicle."  (Id. at 4.)  At this moment, Plaintiff

25  "realized:"

26       (1) he was not wearing his prostetic [sic] leg, (2) CTF
         Transportation Sergeant and his staff were untrained in
27       the necessary technique(s) to lift an amputee correctly,
         (3) the scheduled liver biopsy was urgently needed,
28       (4) no ADA vehicle was going to be summoned to transport

                                    3

him, [and] (5) he would have to crawl up the stairs to get into the non-ADA compliant vehicle."

(Id.)  Defendant Borgman and "numerous other correctional officers stood by and watched" as Plaintiff "crawl[ed] into the transportation vehicle."  (Id.)

Plaintiff was then transported to Natividad Medical Center. When he arrived there, he was "asked by untrained CDCR staff," Correctional Officers A. Peguero and F. Lopez, whether he "wanted to be lifted out of the van."  (Id.)  Plaintiff, realizing that they were "untrained in the correct lifting techniques," refused their assistance and "crawled out of the transportation vehicle." (Id.)

After receiving his liver biopsy, Plaintiff was "escorted back to the same transportation vehicle" by Defendant Amaro, as well as Correctional Officers T. Testerman and M. Orozco.  The officers "again watched the Plaintiff crawl into the transportation vehicle."  (Id.)  When Plaintiff arrived at CTF, he "crawled out of the transportation vehicle," and was escorted back to the CTF medical department.

Licensed Vocational Nurse (LVN) Stout examined Plaintiff and "completed a CDCR 7219 form (Medical Report of Injury or Unusual Occurrence)."  (Id.)  LVN Stout "documented the Plaintiff's injuries on the CDCR 7219 as: 'Scraped R knee when crawling into transport van.'"  (Id.)

III. Disability Discrimination Claim

Title II of the ADA, 42 U.S.C. § 12131 et seq., and § 504 of the Rehabilitation Act, as amended and codified in 29 U.S.C. § 701 et seq., prohibit discrimination on the basis of a disability in

United States District Court

For the Northern District of California

4

the programs, services or activities of a public entity.  The term "public entity" encompasses state correctional facilities.  <u>See Pennsylvania Dep't of Corrections v. Yeskey</u>, 524 U.S. 206, 210 (1998).  The "ADA's broad language brings within its scope anything a public entity does," which "includes programs or services provided at jails, prisons, and any other custodial or correctional institution."  <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 691 (9th Cir. 2001) (internal quotation marks omitted).

Title II of the ADA has been construed to provide a private cause of action, and complainants may elect to proceed with a civil suit at any time.  <u>See Noland v. Wheatley</u>, 835 F. Supp. 476, 484 (N.D. Ind. 1993); <u>Petersen v. Univ. of Wisconsin Bd. of Regents</u>, 818 F. Supp. 1276, 1279-80 (W.D. Wis. 1993).  However, where the ADA or Rehabilitation Act complaint concerns prison conditions, exhaustion is required under the exhaustion provision of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  <u>O'Guinn v. Lovelock Correctional Center</u>, 502 F.3d 1056, 1061 (9th Cir. 2007).

The elements of a cause of action under Title II of the ADA are (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.  <u>Thompson v. Davis</u>, 295 F.3d 890, 895 (9th Cir. 2002).  A cause of action under § 504 of the Rehabilitation Act essentially parallels

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    an ADA cause of action.  See Olmstead v. Zimring, 527 U.S. 581, 590

2    (1999); Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir.

3    2001).

4        Federal regulations require a public entity to "make

5    reasonable modifications in policies, practices, or procedures when

6    the modifications are necessary to avoid discrimination on the

7    basis of disability, unless the public entity can demonstrate that

8    making the modifications would fundamentally alter the nature of

9    the service, program, or activity."  28 C.F.R. § 35.130(b)(7).

10   However, in the prison context, both Title II of the ADA and § 504

11   of the Rehabilitation Act must be applied with consideration to

12   legitimate penological interests.  See Armstrong v. Wilson, 942 F.

13   Supp. 1252, 1259 (N.D. Cal. 1996) (citing Gates v. Rowland, 39 F.3d

14   1439, 1447 (9th Cir. 1994)); Bullock v. Gomez, 929 F. Supp. 1299,

15   1303 (C.D. Cal. 1996).  In other words, "to prevail on a claim that

16   their statutory rights have been violated, inmates must show that

17   the challenged prison policy or regulation is unreasonable."

18   Pierce v. County of Orange, 526 F.3d 1190, 1217 (9th Cir. 2008)

19   (citing Gates, 39 F.3d at 1447).

20       In the present action, Plaintiff alleges he is an individual

21   with a disability within the meaning of Title II of the ADA and

22   § 504 of the Rehabilitation Act.  (Compl. at 4.)  He further

23   alleges that the failure of CDCR to "reasonably modify its

24   prisoner/inmate medical transporation [sic] practice to accommodate

25   Plaintiff, a [sic] otherwise qualified individual, based solely on

26   the Plaintiff's disability constituted a breach of its duty" under

27   Tile II of the ADA and § 504 of the Rehabilitation Act.  (Id. at

28   5.)  Plaintiff also sues in their individual capacity both

Defendants Borgman and Amaro, who were "responsible for [Plaintiff's] medical transport." (Id. at 1-2.) Finally, Plaintiff claims that as a direct result of CDCR's failure to provide him with an ADA-compliant transportation vehicle, he was "forced to endure the humiliation of discrimination by not being provided a[n] ADA medical transport van, thereby burdening the Plaintiff different from and greater than a burden on non-disabled prisoners/inmates." (Id. at 5.)

    A.   Proper Defendant

    Plaintiff cannot bring an action under Title II of the ADA or § 504 of the Rehabilitation Act against individual officers, because the proper Defendant in such actions is the public entity responsible for the alleged discrimination.  Nor can he bring a § 1983 action against Defendants in their individual capacities based on such allegedly discriminatory conduct.  See Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or § 504 of the Rehabilitation Act.").  Thus, the only proper Defendant in this action is CDCR, the public entity which allegedly denied Plaintiff equal benefits of its services.

    In the Ninth Circuit, state agencies are not entitled to Eleventh Amendment sovereign immunity from suit under Title II of the ADA.  Phiffer v. Columbia River Correctional Institute, 384 F.3d 791, 792 (9th Cir. 2004) (per curiam).  As to the Rehabilitation Act, the Ninth Circuit has held that "[b]ecause California accepts federal funds under the Rehabilitation Act, California has waived any immunity under the Eleventh Amendment" as

to that Act's anti-discrimination provisions.  See Clark v. State
of California, 123 F.3d 1267, 1271 (9th Cir. 1997).

Therefore, Plaintiff may state a claim of disability
discrimination against CDCR, and CDCR only.

B.   Analysis of Disability Claim

The Court assumes without deciding that Plaintiff has met the
first element of a cause of action under Title II of the ADA
because the loss of his left leg constitutes "a physical or mental
impairment" which "substantially limits one or more of the major
life activities . . . ."  42 U.S.C. § 12102(1).  As such, Plaintiff
is an individual with a qualifying disability under Title II of the
ADA and § 504 of the Rehabilitation Act.  Second, Plaintiff is
qualified to "receive the benefit of the defendant [CDCR]'s
Disabled Prisoner Transport program and/or vehicles" due to his
disability.  (Compl. at 5.)  Third, the record shows that Plaintiff
was denied the use of this "benefit" because an ADA-compliant
transportation vehicle was not available when he was scheduled to
be transported to Natividad Medical Center to receive his liver
biopsy.  However, Plaintiff has not met the fourth element because
he cannot show that "such exclusion, denial of benefits, or
discrimination was by reason of [his] disability."  Instead, the
record shows that Plaintiff is "normally transported" in a ADA-
compliant transportation vehicle when taken off-site.  (Id. at 3.)
However, on March 16, 2010, the ADA-compliant transportation
vehicle was unavailable because it was being used by another
transportation team.  (Id.)  Plaintiff was given the option not to
be taken to the hospital at that time because an ADA-compliant
transportation vehicle was not available; however, he chose to

United States District Court
For the Northern District of California

1   proceed because he claimed his liver biopsy was "urgently needed."

2   (Id. at 4.)  After Plaintiff completed his liver biopsy, he was

3   transported back to CTF in the same non-ADA-compliant

4   transportation vehicle.  (Id.)  The facts alleged by Plaintiff do

5   not support the assertion of a violation of his rights under Title

6   II of the ADA or § 504 of the Rehabilitation Act.

7       Accordingly, the Court finds that Plaintiff has failed to

8   state a claim upon which relief may be granted.  Because amendment

9   would be futile, this action is DISMISSED with prejudice.

10                            CONCLUSION

11      For the foregoing reasons, this action is DISMISSED with

12  prejudice and without leave to amend.

13      The Clerk of the Court shall enter judgment and close the

14  file.

15      IT IS SO ORDERED.

16  DATED: 9/7/2011

17                         CLAUDIA WILKEN
                           UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28

1    UNITED STATES DISTRICT COURT
                     FOR THE
2        NORTHERN DISTRICT OF CALIFORNIA

3

4    WILLIAM OBERPRILLER,
                                           Case Number: CV10-03782 CW
5              Plaintiff,
                                           **CERTIFICATE OF SERVICE**
6        v.

7    CALIFORNIA DEPARTMENT OF
     CORRECTIONS et al,

8              Defendant.
     _____/
9

10   I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
     Court, Northern District of California.
11
     That on September 7, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said
12   copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said
     envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
13   located in the Clerk's office.

14

15
     William M. Oberpriller C-80076
16   C.S.P. - Solano
     BLD#6 250 LOW
17   P.O. Box 4000
     Vacaville,  CA 95696-4000
18
     Dated: September 7, 2011
19
                                           Richard W. Wieking, Clerk
20                                         By: Nikki Riley, Deputy Clerk

21

22

23

24

25

26

27

28